*FILED IN CHAMBERS*
*U.S.D.C. – Rome*

*OCT - 1 2019*

*JAMES N. HATTEN, Clerk*
*By: _____*

(Rev. 10/2016) Cell Site Simulator: Geo-Locating Search Warrant - Fugitive

# UNITED STATES DISTRICT COURT
### Northern District of Georgia

APPLICATION FOR SEARCH WARRANT
AND PEN REGISTER ORDER

IN THE MATTER OF THE USE OF A CELL-SITE
SIMULATOR TO LOCATE THE CELLULAR DEVICE
ASSIGNED CALL NUMBER 770-843-2312

CASE NUMBER: 4:19-mc-56

UNDER SEAL

I, Samuel J. Lee, being duly sworn, state as follows:

I am a/an Task Force Officer of the DEA and have reason to believe that the:

- **TARGET CELLULAR DEVICE**: a Verizon cellular device assigned call number 770-843-2312 subscribed in the name of Nemesio Martinez at 5191 Williams Norcross GA 30093, and believed to be used by Luis PEREZ (who is a subject of the Agency's investigation)

contains and/or will transmit evidence, namely radio signals that indicate the physical location of the Target Cellular Device. This evidence is related to an on-going investigation to locate Luis PEREZ, a person to be arrested, in the Northern District of Georgia, thus establishing grounds for the issuance of this warrant.

The facts to support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT

_____
Signature of Affiant
Samuel J. Lee

*Government Counsel Certification* – This Application is also being made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register/trap and trace device. In support of this Application (and any attachments and/or incorporated materials), undersigned government counsel, certifies under penalty of perjury that: (1) I am an "Attorney for the government," as defined in Federal Rule of Criminal Procedure 1(b)(1); (2) the DEA is conducting a criminal investigation related to this application; and (3) the information likely to be obtained by this request is relevant to said agency's ongoing criminal investigation.

_____
Signature of Government Counsel
John T. DeGenova
*Assistant United States Attorney*

Sworn to before me, and subscribed in my presence

October 1, 2019
Date

at   Rome, Georgia
City and State

Walter E. Johnson
United States Magistrate Judge
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

AUSA John T. DeGenova /404-581- 6201

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Samuel J. Lee, being first duly sworn, hereby state as follows:

**A.  Agent Experience**

1.  As a Task Force Officer of the DEA ("Agency"), I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7).  Therefore, I am empowered to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.  I am employed as a Task Force Officer with the DEA and have been assigned since October 2018.  I am currently assigned to the DEA's Atlanta Field Division, Enforcement Group 1.   I am currently employed with the Cartersville Police Department and have been so employed since July 2013.  While employed with the Cartersville Police Department, I was first assigned to the Patrol Division and then transferred to the Bartow-Cartersville Drug Task Force where I spent approximately three years assigned to the FBI Safe Streets Task Force (a drug and gang task force) as a Drug Investigator.

3.  While serving as a Drug Investigator, I have received numerous hours of training involving the distribution of illegal narcotics. This training addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means in which they protect their proceeds and their controlled substances; and the manner and means by which drug traffickers attempt to avoid law enforcement detection of their activities.  The controlled substances as to which this training applied included, but were not limited to, marijuana, cocaine, heroin, and methamphetamine.

4. During my law enforcement career, I have written and/or executed numerous search and seizure warrants pertaining to the seizure of all types of criminal evidence, such as illegal drugs, drug paraphernalia, drug records, drug proceeds and evidence of other types of crimes and arrest warrants pertaining to the arrests of individuals involved in drug trafficking activities.   I have participated in numerous drug investigations and have deployed various investigative techniques during those investigations. I have become familiar with the patterns of activity of drug traffickers; the types and amounts of profits made by drug dealers; and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

5. Based on my training and experience in the investigation of drug traffickers, and based upon interviews I have conducted with defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business. My familiarity includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones to facilitate their drug trafficking activity; and their use of numerical codes and code words to conduct drug transactions. I am familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds; the use of third parties to purchase or hold title to assets; and the use of stash houses to store large quantities of drug proceeds.

6. In addition, I have consulted extensively with other experienced agents regarding drug trafficking activities. As a result, the knowledge that I have

obtained during my law enforcement career has been further informed by other law enforcement agents with experience conducting drug investigations.

7.  In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, Sections 1952, 1956, and 1957.  I have received training, both formal and informal, in the enforcement of the drug laws, investigation of drug trafficking and money laundering organizations, drug recognition and terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance.

8.  I am familiar with and have used many of the traditional methods of investigation, including, without limitation, visual surveillance, electronic surveillance, informant and witness interviews, consensually recorded telephone conversations, wiretap investigations, defendant debriefings, the use of confidential sources, undercover operations, execution of search warrants, the seizure of drug evidence, and controlled purchases of drugs, among others.

9.  I have participated in numerous drug investigations, in which traditional methods of investigation were used that have resulted in the arrests of individuals who manufactured, smuggled, received, and distributed controlled substances, and where illegal narcotics and narcotics proceeds were seized.  In connection with those and other narcotics cases, I have conducted follow-up investigations relating to the laundering and concealment of assets, analysis of bank and other financial records, and identification of conspirators through ledgers, telephone bills, records, and photographs.

10. I have been involved in the debriefing of defendants, witnesses, and informants, as well as others, with knowledge of the importation, distribution, and transportation of controlled substances and of the laundering and concealing of proceeds derived from drug trafficking.  I have written and/or executed search, seizure, and arrest warrants pertaining to the seizure of all types of criminal evidence, including illegal drugs, drug paraphernalia, drug proceeds, drug records, and evidence of other types of crimes.  I personally have participated in Title III investigations, including wiretap investigations involving drug trafficking organizations.

11. Based upon training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug trafficker's import and distribute drugs; use cellular telephones to facilitate drug activity; and use numerical codes and coded language to conduct their transactions.   In my experience, drug traffickers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their drug trafficking activities from law enforcement.  I also am familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds, the use of electronic wires, and the use of off-shore accounts to launder and conceal assets.

4

12.   I further have been involved for more than four years in the exploitation, analysis, and evaluation of the particular information, which is almost exclusively associated with the use of cellular telephone devices.  This particular information includes but is not limited to;

    a.   the use of cell site data, GPS pings and telephone company records to identify the location where cellular telephones are being used;

    b.   the telephone companies utilization of I.M.E.I. "International Mobile Electronic Identifier," and ESN "Electronic Serial Numbers" to identify a particular telephone device within the cellular companies system to a particular telephone number with a particular cellular device;

    c.   analysis of telephone records to identify potential co-conspirators in investigations where cellular telephones are being used; and

    d.   the use of cell site simulator type equipment to identify cellular devices used by targets subjects.

**B.   Target Cellular Device**

13.   Pursuant to Federal Rule of Criminal Procedure 41, I make this affidavit in support of an application for a search warrant to authorize law enforcement officers to employ an electronic investigative technique to determine the location of the:

    a.   *Target Cellular Device* – a Verizon Wireless cellular device assigned call number 770-843-2312, subscribed in the name of Nemesio Martinez at 5191 Williams, Norcross, GA 30093, and

5

believed to be used by Luis PEREZ (who is a subject of the Agency's investigation).

14.     Pursuant to an investigation to locate Luis PEREZ who is a person to be arrested, this warrant authorizes the officers to whom it is directed to determine the location of the Target Cellular Device by collecting and examining: (a) radio signals emitted by the Target Cellular Device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and (b) radio signals emitted by the Target Cellular Device in response to radio signals sent to the cellular device by the officers; for a period of 45 days, during all times of day and night.[1]

15.     One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location. Nevertheless, there is probable cause to believe the Target Cellular Device is currently located somewhere within this district because the device's user is known to spend time and live in this district and the area code and subscriber address correspond to this district. Pursuant to Rule 41(b), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

16.     Based on the facts set forth in this affidavit, probable cause exists to believe that Luis PEREZ has violated 21 U.S.C. §§ 841 and 846. Luis PEREZ was charged with these crimes on April 23, 2019 and is the subject of an arrest warrant issued on April 24, 2019. Probable cause also exists to believe that the location of

---

[1] Notably, the DEA is not seeking authorization to intercept any telephone calls, text messages, or other electronic communications, nor is it seeking to seize any tangible property. For the reasons in this affidavit, I submit reasonable necessity exists to use the investigative technique described herein.

Target Cellular Device, which is believed to be used by Luis PEREZ, will assist law enforcement to arrest Luis PEREZ, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

17.     Given that collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1).

**C.  Cell Site Simulators**

18.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

19.     To facilitate execution of this warrant, law enforcement will use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The investigative device may send a signal to the Target Cellular Device and thereby prompt the Target Cellular Device to send signals that include the

unique identifier of the Target Cellular Device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

20.     The investigative device may interrupt cellular service of other cellular devices within its immediate vicinity. Any service disruption to non-target cellular device/s will be brief and temporary, and all operations will attempt to limit the interference with such devices. To connect with the Target Cellular Device, the investigative device may briefly exchange signals with all phones or other cellular devices in its vicinity.  These signals may include cell phone identifiers. The investigative device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from cellular devices other than the Target Cellular Device.

**D.  Sources of Information**

21.     The facts set forth in this affidavit are based on my personal observations and knowledge, and may also be based on: (a) my training and experience, (b) information obtained from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation.  Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested

search warrant. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

**E.  Probable Cause Basis**

22.     Since approximately March 2018, DEA Atlanta has been investigating a drug trafficking ring operating in Rome and Atlanta, Georgia, and elsewhere.  Members of the organization have included Juan Cain VALENCIA-Ramirez, Luis Antonio PEREZ, Javier RIVERA, Ricky MCPHERSON, and others for drug trafficking and money laundering in the area of Atlanta and Rome, Georgia, and Houston, Texas.  As discussed below, agents believe that PEREZ, the user of the Target Cellular Device, was a drug courier for VALENCIA-Ramirez, the leader of this distribution network.

23.     In October 2018, agents executed a federal search warrant at 223 Ellis Road, Rome, Georgia.  There, agents found a large quantity of methamphetamine buried on the property.  In the house, agents found two cellular telephones that appeared to have been used by or belonged to PEREZ.  When agents searched the phones pursuant to a federal search warrant, agents identified PEREZ's Facebook account, "atlvatoz.luis," (Facebook ID 100002397117392).  Agents recognized an accompanying Facebook profile picture of the telephone user as Luis PEREZ.

24.     On April 23, 2019, the grand jury in the Northern District of Georgia charged VALENCIA and PEREZ in a sealed indictment with a conspiracy to distribute methamphetamine, distribution of methamphetamine, and attempted distribution of methamphetamine.  Arrest warrants were issued for VALENCIA-Ramirez and PEREZ on April 24, 2019, and PEREZ is currently a fugitive.

25.     On July 24, 2019, a search warrant was authorized by Magistrate Judge Walter E. Johnson for information associated with PEREZ's Facebook account: "atlvatoz.luis" and Facebook ID 100002397117392.

26.     On August 7, 2019, Facebook provided agents with records concerning the account.  For instances that the account was "logged in to" or accessed, Facebook provided dates, times, and Internet Protocol (IP) addresses associated with the logins.  Using these IP addresses provided, agents were able to identify Internet Service Providers (ISPs) that provided the internet access to log-in to PEREZ's account. Agents determined that someone had logged onto PEREZ's Facebook account through the ISP Verizon Wireless on June 29, 2019 at 19:24 hours UTC; June 30, 2019 at 12:43 hours UTC; and July 3, 2019 at 12:32 hours UTC.

*Identification of Target Cellular Device*

27.     Agents obtained Verizon records to identify the Verizon account associated with the IP addresses used to log-in to PEREZ's account.  The Verizon subscriber for the account for all three of the above-referenced log-ins was listed as Nemesio Martinez at 5191 Williams in Norcross, GA 30093.   A telephone number attached to the account was 770-843-2312 (Target Cellular Device).  The Target Cellular Device has been active since June 26, 2019.

28.     From the investigation, agents know that the address associated with the Target Cellular Device (5191 Williams Road) is the same address listed on PEREZ' GA Driver's License.

29.     Further, on April 18, 2018, PEREZ used telephone number 470-303-7588 to speak with a DEA Undercover Agent to finalize the details of a purchase

10

of one kilogram of methamphetamine.  Telephone records for that 7588 number showed that the subscriber was listed as Luis Perez at 5191 Williams Rd, Norcross, GA 30093.  The 7588 number was active from March 20, 2018 until April 20, 2018.

30.     Further, toll records show that the Target Cellular Device is in contact with other telephone numbers previously identified in this investigation.

31.     Based upon my training and experience I know that drug traffickers will frequently possess multiple telephones.  For example, during the course of the, agents determined VALENCIA used approximately nine different telephone numbers over a seven-month period.  However, while drug traffickers may frequently change their telephone numbers, they will contact the same individuals.

32.     Based on this information set forth in this affidavit, and my training and experience, I believe that PEREZ has used and is currently using the Target Cellular Device.

33.     Agents are seeking authorization here to use a cell-site simulator to more precisely locate the Target Cellular Device and PEREZ.  Determining the location of the Target Cellular Device will assist agents in further identifying PEREZ's location or locations that he has frequented, which will lead to information that will lead to his arrest.

**F. Conclusion**

34.     As a result, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.  The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.  I further request that the Court authorize execution of the warrant at any time of day or

night, given the potential need to locate the Target Cellular Device outside of daytime hours.

35.    I also request that the search warrant, supporting application, affidavit, and associated pleadings be filed UNDER SEAL until further order of the Court to guard against flight, avoid the destruction of evidence, avoid the intimidation of witnesses, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the Court's Orders.